Our final oral argument of the day is Sughayer v. Fifth Third Bank. Good morning, Your Honor. It's John O'Toole. Mr. O'Toole. Good morning, Your Honor. It's John O'Toole. May it please the Court. I represent the plaintiff in this case, Manal Sughayer, who is a Palestinian Muslim, worked at a bank called MB Financial, which was eventually merged into Fifth Third Bank. The discriminatory act at issue in this case is comments made by Mr. Ball, the head of the business banking unit. They refer to Manal as, quote, a different animal from Galena and I. That's code word for discriminatory verbiage, discriminatory comments directed at minority classes of people. By the way, Galena and I, I referring to Mr. Ball, are both white. As a result of that comment, Mr. Ball was disciplined. It's not clear from the record what discipline he received, but he was disciplined. It came to a point in time where two female employees were promoted to vice president. These people were Inerko and Bernaki Terra, Inerko and Terry Bernak, who were promoted by the supervisor, Ms. Hupter. This case is really here on appeal, on a failure to promote. The key elements to look at that the court considered was whether Ms. Sughayer was a member of a protective class, which she is. Whether she was qualified, the court made a determination that she was. Was she was rejected and somebody outside of protective class was promoted, that occurred. And then the final prong, which is really the key behind this case, is whether Ms. Banal was equally or more qualified. The court found that she wasn't equally or more qualified, and I view that as wrong. I view that as more of a decision for the jury. The bank did not have any clear guidelines as to who gets promoted. Basically, they looked at longevity, the person held in grade, and what kind of performance he or she had. They could have had very specific grounds for promoting people for various positions. They didn't. This isn't like a 100-yard dash, where you have runners A, B, C, and D. The gun goes off, and at the finish line, you can see which runner ended up in first place by the time. One runner had 9.8. The other runner had 9.6. The other runner was over 10 seconds. So there's no clear line or criteria to determine who gets promoted to vice president. I think the challenge that you have, where you started, is the best argument you have about Mr. Ball's comment. But what evidence was there that he had anything at all to do with promotion decisions? He's head of business banking. And in the affidavit from Manal Sukhaler, she mentioned that it was common knowledge that business banking had input in decisions involving promotions of people in the branch manager position. Yeah. And also, Judge, if I might add as well, Mr. Ball had involvement. Common knowledge sounds like a rumor. Was there any evidence that he had any input? Other than her testimony. Just her testimony, Judge. No, no. Testimony that there is common knowledge about something is just relaying a rumor. I'm asking whether there was evidence that this man had input into the vice presidential hiring decisions. It's not clear, Judge. There's either evidence or there's no evidence. Is there any evidence? I think there's inferential evidence you could make because he also has involved with a unit called Payrock. And Payrock was an affiliated unit of the bank that was, in effect, ripping off their own customers by charging them excessive fees. This deception was uncovered by Manal Sukhaler. Yeah, there's no retaliation claim before us. I think, Judge, I'm asking the question for perhaps the same reason Judge Easterbrook is, and that is I don't see any barrier in the litigation to offering evidence to support the common knowledge assertion. In other words, during the summary judgment proceedings, you could have rounded up some affidavits of people that said, based upon their personal knowledge, that, yes, Mr. Ball is involved in promotion decisions of vice presidents, and he was involved in this one or that one. There's just no barrier in the summary judgment proceedings to you doing that. I would have done that, Judge, had I been at the trial level, but I wasn't. I'm sorry, her counsel. I mean, it could have been done. It could have been, yes, Judge. So now on appeal, when you point to common knowledge, it's not evidence of a role that Mr. Ball, in fact, played with promotions. It could have been brought out. Because common knowledge, almost by definition, it's referring to the knowledge of others. That's correct, Your Honor. Right, and so those others didn't come forward with affidavits. That's true, but it would also include the plaintiff as to what she heard. What she heard is not personal knowledge. It's just the rules. It may be knowledge that she heard a rumor, but hearing a rumor does not establish the underlying fact. That's just one of the facts, Judge. There's other key facts involved in this case that I think I'd like to emphasize. And one of the key facts I mentioned is the fact that Ms. Zughauer managed two branches. And in my argument for the court, I compared it to Operation Juno versus Operation Omaha. I mean, that's twice the responsibility as a NRCO or an OCAD. Juno was a cakewalk for the British compared to Omaha, which was a traumatic experience, a lot of loss of lives. In a sense, they're similar in a way because one was much more difficult than the other. And the only other person that managed two offices was Justin Murphy, and he got promoted to vice president. Manala Zughauer managed two branch offices for seven years. Two people prior to her managing that branch office, neither of them lasted a year. That is an important fact that I believe Judge Blakey should have emphasized, or at least considered more than he did, along with the fact that she had uncovered the scandal at Payrock. Now, this thing had blown up, and the press or media got a hold of it. One can only imagine the negative effect it would have had on the bank. I mean, people that normally would have banked with Fifth Third may have reconsidered or gotten loans from Fifth Third. Let's not forget that in 2017, Manala Zughauer also won the Holiday Blitz, although technically she came in second place. This was a sales contest involving all branch offices. In actuality, she came in first. So I think the key facts, the fact that she managed two branch, she managed pro-staff, she uncovered the scandal at Payrock. Granted, she had some employee issues, one involving a lady by the name of Killian and the other by the name of Perkey. When she promptly investigated, she promptly talked to both workers, and it was at that point in time where her supervisor came in and took over the investigation. There was nothing that she did wrong. You're going to have employees, bad employees, now and again. It happens in every business. One other thing I'd like to mention as well, and that is one of the persons that testified for the appellee whose deposition was taken that business banking had no involvement in the case, I think can be contradicted by the fact that part of the essential goals of a branch matter is to interact with business banking. I want to quote for you directly. Where this is said, and this is under the essential duties and responsibility of being a BCM or business branch center manager, and I quote, quote, proactively sell banking services to meet established sales goals and must possess an ability to develop business and build relationships. I would argue that that would invite business banking. You would want your branch managers to get involved with business banking. And who's the head of business banking? Ball. Who is the accusation made about? I'm going to call him a different animal than Galena and me. Ball. I think a jury could see the connection between Ball's involvement and Rinala Sughauer not getting promoted. I think that's a reasonable fact that juries could weigh, and I think the court was wrong deciding this on their own. No more questions? Thank you, Mr. O'Toole. Mr. Moore. May it please the court. My name is David Moore. I'm counsel for the Appalachee Fifth Third Bank. The district court's opinion should be affirmed. There are no disputes about the material facts. I would encourage you to look at plaintiff's response to our statement of undisputed facts submitted before the district court in support of summary judgment. It's in our supplemental appendix. You will see that plaintiff admitted nearly all, not all, but nearly all of the facts set forth in it. And when you look at the record as a whole, as required under Ortiz, the evidence would not permit a reasonable jury to find that the plaintiff was not promoted in rank because of her race, color, religion, or national origin. So if we're looking at the undisputed facts, plaintiff does not dispute that her supervisor, the retail regional manager, Farrah Huber, made the promotion recommendations at issue. Plaintiff does not dispute that Huber is the same color, brown, in religion, Muslim, as plaintiff. What does that have to do with anything? I think it's less likely for someone to discriminate against someone. You know the Supreme Court of the United States has affirmatively held that that is not a permissible consideration. That's Castaneda against Partita, and we are, or at least we try, to follow the Supreme Court. Thank you, Your Honor. In her appellate brief, plaintiff says Huber did not exhibit animosity towards the appellant. Plaintiff testified in her deposition that she had a positive and professional working relationship with Huber, as well as her second-level supervisor, who was in retail, Tim Millens, who also participated in the promotion decisions. Now with respect to Mr. Ball's email, when plaintiff reported Mr. Ball's email, it's undisputed and plaintiff testified that both Huber and Millens expressed disagreement with the email, offered support to plaintiff, and ensured or confirmed that HR was investigating. It's also undisputed that Mr. Ball was disciplined. Other than raising concerns about Ball's email, plaintiff testified that she didn't report any other concerns along the lines of harassment, discrimination, or retaliation. Plaintiff also testified that no one else at the bank, including Huber or Millens, made any derogatory remarks about her protected classes. And as to Ms. Huber's decision about who to promote and rank in September of 2018, the district court summarized the undisputed facts very well. The record confirms that the plaintiff was not promoted because in the short time that plaintiff worked for Huber, Huber observed her having challenges properly managing her subordinates and meeting her sales goals. Huber instead promoted NERCO and BORNAC for advancement because Huber had a long established relationship with them, because they both demonstrated a desire to be promoted, and because they were both highly qualified. Plaintiff also doesn't dispute that Katie Drinan from Human Resources, Senior Vice President of Retail Banking, Joe Shields, who was Millens' supervisor, and Executive Vice President of Consumer Banking, Brian Wildman, reviewed and approved the promotion decisions. Plaintiff testified that Millens, Drinan, Shields, and Wildman did not discriminate against her because of her race, color, religion, or national origin. Plaintiff also testified that that group did not say anything derogatory about her protected classes. This record as a whole would not permit a reasonable jury to conclude that plaintiff was not promoted because of discrimination under Ortiz. You had a number of questions related to Stephen Ball's email. I just want to clarify for the record what was stated in the email, and I'm reading from our Statement of Undisputed Facts in Plaintiff's Response, Fact 42. The email says, Manal is a different animal than Galena, and I already understand what could have happened. It didn't say, Manal is a different animal than Galena and I, period. In any event, this doesn't create a material issue effect because the bank doesn't dispute that the email was sent. This comment also doesn't denote a discriminatory animus. Something different animal means something different. But even if we assume a discriminatory connotation, this was an isolated comment. It was made to someone outside of the bank, and it was not connected to the promotion decisions. Fourth, and you touched on this earlier, plaintiff did not testify in her affidavit that Mr. Ball was involved in promotion decisions in the retail department, nor did she testify to that in her deposition, nor is there any admissible evidence in the record that shows that Ball had anything to say, good or bad, about whether plaintiff or any other person should be promoted in 2018. And again, plaintiff doesn't dispute that Huber, the person that made the recommendations, disagreed with Mr. Ball's email and made sure that it was addressed. And when you're thinking about pretext under McDonald-Douglas, plaintiff has to show that Ms. Huber is lying and that the reasons that she is lying are to cover up discrimination based on race, religion, national origin, or religion. Plaintiff has failed to set forth any such evidence. If you have no further questions, thank you for your time and urge you to affirm the district court's decision. Thank you. Mr. O'Toole, anything further? If the email that counsel had raised were the only indication of discriminatory conduct, I'd agree with him that there was no evidence of discrimination. But when you look at that discriminatory comment and along with Ball's involvement in Payrock and Manal Sughour's uncovering of that pricing scandal, you can put two and two together to see how there might be discriminatory conduct existed by the bank against Manal when it came time for a promotion. I think it would be naive to believe... Thank you, counsel. Thanks, sir. The case is taken under advisement and the court will be in recess.